1
2
3
4
5
6
7
8
9 **UNITED STATES DISTRICT COURT**

10 **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| MAHA SAKO, | CASE NO. 14CV1034-GPC(JMA) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| WELLS FARGO BANK. N.A., | |
| Defendant. | [Dkt. No. 51.] |

At the pretrial conference held on October 9, 2015, the Court directed the parties to address the issue of unconscionability of provisions relied upon by Defendant to deny Plaintiff certain earned commissions.  On November 16, 2015, Plaintiff filed a motion for partial summary judgment on the issue of unconscionability.[1]  (Dkt. No. 51.) Defendant filed an opposition on December 7, 2015. (Dkt. Nos. 53, 54).  A motion hearing was held on December 17, 2015.  (Dkt. No. 58.)  Stephen Ilg, Esq. appeared on behalf of Plaintiff, and Beth Kearney, Esq. appeared on behalf of Defendant.  After a review of the briefs, supporting documentation, the applicable law, and hearing oral

---

[1]Defendant objects to Plaintiff's filing of a motion for partial summary judgment because the Court directed Plaintiff to file it as a motion in limine.  Moreover, it contends that the motion for partial summary judgment is untimely as the motion cut-off deadline was in May 2015.  Despite the Court's direction, the Court finds it appropriate to raise the legal issue of unconscionability as a motion for partial summary judgment.

1   argument, the Court GRANTS in part and DENIES in part Plaintiff's motion for

2   partial summary judgment.

3                                     **Background**

4        Plaintiff Maha Sako ("Plaintiff" or "Sako") filed a complaint against her former

5   employer Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") due to

6   her termination as a Home Mortgage Consultant ("HMC") at the La Mesa branch on

7   March 20, 2013.[2]   After the Court's ruling on Defendant's motion for summary

8   judgment, the remaining causes of action are for unpaid wages pursuant to California

9   Labor Code section 201, waiting time penalties pursuant to California Labor Code

10  section 203, and violation of California Business & Professions Code section 17200

11  *et seq.* ("UCL") based on these Labor Code violations.

12       As an HMC, Plaintiff alleges she is entitled to commissions earned for loans that

13  closed in the month of her termination, in March 2013, and thirty days thereafter.

14  Defendant contends that Plaintiff is not entitled to commissions because she violated

15  Wells Fargo's Code of Ethics and Business Conduct ("Code of Ethics"), Risk

16  Management Accountability Policy, and the 2013 Incentive Compensation Plan ("2013

17  ICP" or "ICP") by issuing fraudulent mortgage preapproval letters to customers.  The

18  2013 ICP provides that an HMC terminated for misconduct based on violations of

19  Wells Fargo's policies is not entitled to commissions earned in the month of

20  termination.

21       Recently, Plaintiff raised the issue of unconscionability as to the Code of Ethics,

22  Risk Management Accountability Policy[3], and the 2013 ICP for the first time in her

23  _____

24       [2]The Complaint alleged causes of action for wrongful termination of employment
     in violation of public policy; race and gender discrimination in violation of the Fair
25   Employment and Housing Act; intentional infliction of emotional distress; violation
     of California Labor Code section 201 (unpaid wages); violation of California Labor
26   Code section 203 (waiting time penalties); and violation of California Business and
     Professions Code section 17200.  (Dkt. No. 1-1, Compl.)
27
         [3]While Plaintiff argues that the Risk Management Accountability Policy is
28   unconscionable, she does not specifically address specific provisions for purposes of
     addressing substantive  unconscionability.

opposition to Defendant's motion for summary judgment in July 2015 even though the discovery deadline was on April 20, 2015. (Dkt. No. 54-3, Kearney Decl. ¶¶ 2, 4.) As a result, Defendant claims it was unfairly prejudiced and could not conduct discovery on the issue prior to filing its reply to its motion for summary judgment. (Id. ¶ 5.)

At the pretrial conference held on October 9, 2015, the Court noted that Plaintiff should have raised the issue of unconscionability earlier but due to the procedural posture in which the issue of unconsionability was raised in the summary judgment motion, the Court was not in a position to decide it as a matter of law. (Dkt. No. 52 at 2-3[4].) However, the Court stated that unconscionability is an issue of law[5], not to be decided by a jury and to be resolved prior to trial as a motion in limine. (Dkt. No. 52.) Therefore, at the Court's direction, on November 16, 2015, Plaintiff filed a motion for partial summary judgment arguing that Wells Fargo's policies are unconscionable and Defendant filed an opposition.

### Factual Background[6]

Maha Sako worked with Wells Fargo in different job titles from 1986 through the date of her termination on March 20, 2013. (Dkt. No. 51-4, Sako Decl. ¶¶ 3, 5.) At the time of termination, she was a Home Mortgage Consultant at the La Mesa branch. (Id. ¶ 3.) At termination, her immediate supervisor, Steven Sawyer,[7] the Branch Manager, told her she would be paid her commissions. (Id. ¶ 8.) However, Wells Fargo later told her that she would not receive her earned commissions. (Id.) She claims that her commissions amount to around $52,305.50 during the month of

---

[4]The pages numbers are based on the CM/ECF pagination.

[5]Whether a provision is unconscionable is a question of law. Cal. Civ. Code § 1670.5(a); Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 851 (2001).

[6]The Court provides a brief summary of the facts as it relates to the issue of unconscionability. A more detailed factual background is provided in the Court's order granting in part and denying in part Defendant's motion for summary judgment filed on August 21, 2015. (Dkt. No. 40 at 2-12.)

[7]Sawyer was not involved in the termination decision. (Dkt. No. 25-2, Kading Decl., Ex. B, Sawyer Depo. at 124:15-23.)

[14CV1034-GPC(JMA)]

termination and thirty days thereafter.  While Plaintiff states she never received a hard copy of the 2013 ICP, she was aware of the terms of her commissions. (Dkt. No. 54-3, Kearny Decl., Ex. A, Sako Depo. at 25:22-25.)

Prior to Wells Fargo's decision to terminate Plaintiff, Wells Fargo's Employee Relations Consultant, Julie Miller ("Miller"), drafted a fact-finding report recommending termination after Corporate Security conducted an investigation of Sako's issuance of unauthorized mortgage preapproval letters. (Dkt. No. 25-5, Miller Decl. ¶¶ 6, 9; Ex. L.)  The fact finding report was then presented to the Business Conduct Review Committee which voted to proceed with the recommendation of termination.  (Id. ¶ 15.)  Then the recommendation was presented, in a memo, to the divisional manager for the Team Member's division which was Drew Collins, the Senior Vice President, Retail Division Sales Manager.  (Id. ¶ 16; Ex. L at 151-56.) Collins states that Miller's fact-finding report concluded that Plaintiff's acts violated Wells Fargo's Code of Ethics and Risk Management Accountability policy and were considered dishonest acts against Wells Fargo.  (Dkt. No. 25-6 Collins Decl. ¶ 3.) Collins accepted the Business Conduct Review Committee's recommendation and authorized her termination. (Id.)  After Collins authorized Sako's termination, the next step was for Miller to advise Sawyer how to proceed with the termination.  (Dkt. No. 25-5, Miller Decl. ¶ 16.)  On March 13, 2013, Miller sent Sawyer an email regarding the termination decision and provided guidance on how to terminate Plaintiff.  (Dkt. No. 25-5, Miller Decl., Ex. G at 131.)  The email also stated that team members do not receive anything in writing regarding their termination.  (Id.)

**A.    Legal Standard for Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 ("Rule") empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**B.   Request for Judicial Notice**

Plaintiff filed a request for judicial notice of documents filed in the case of

[14CV1034-GPC(JMA)]

*Ascarrunz v. Wells Fargo*, San Francisco Superior Court Case No. CGC-13-534620 (Aug. 25, 2014). (Dkt. No. 51-7.) Defendant opposes. (Dkt. No. 53-4.)

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are either "generally known" or "can be accurately or readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). The Court may take judicial notice of proceedings in other courts. United States ex rel. Robinson Rancheria Citizens Council v. Borneo, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

The Court concludes that it is appropriate to take judicial notice of the documents filed in the Ascarrunz case. Accordingly, the Court GRANTS Plaintiff's request for judicial notice.

**C.     Res Judicata**

Plaintiff argues that Wells Fargo should be collaterally estopped from asserting that the same contract terms, that were deemed unconscionable in the state court case of Ascarrunz v. Wells Fargo, San Francisco Superior Court Case No. CGC-13-534620 (Aug. 25, 2014), (Dkt. No. 51-10 at 2-16), are enforceable in this case. According to Plaintiff, the facts in the Ascarrunz case concern the same provisions of the ICP in this case, the prior proceeding resulted in a final determination, and Wells Fargo is the same party in both proceedings. In response, Defendant argues that the Ascarrunz case involves a different ICP, a different plaintiff with different facts, and can have no collateral estoppel effect.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that we "give the same preclusive effect to a state-court judgment as another court of that State would give." Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986). Federal courts must give a state court judgment the same preclusive effect as would be given to that judgment under the law of the State in which the judgment was rendered. Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 81 (1984); see also Marrese v.

American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (federal court should determine the preclusive effect of a [earlier] state court judgment [through reference] to the law of the State in which judgment was rendered); Pension Trust Fund v. Triple A Mach. Shop, 942 F.2d 1457, 1460 (9th Cir. 1991) (examining California law for purposes of determining res judicata effect of an earlier California state court judgment).  Here, since the Ascarrunz case was decided in California state court, the Court looks to California law.

Res judicata applies to "both a previously litigated cause of action, referred to as claim preclusion, and to an issue necessarily decided in a prior action, referred to as issue preclusion."  Brinton v. Bankers Pension Servs., Inc., 76 Cal. App. 4th 550, 556 (1999) (citation omitted).

> The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.

Id.

On these factors, Defendant disputes the first factor arguing that the facts and claims in the Ascarrunz case are not identical, and involve a different ICP to a different individual under different facts.

In California, collateral estoppel bars litigation of an "issue already decided by a prior judgment only if the issue previously decided is *identical* to the one which is sought to be relitigated."  Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 852 (2001) (emphasis added).

> [I]f the very same facts and no others are involved in the second case, . . . the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus, the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of stare

> decisis. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment.

Id. (quoting Commissioner v. Sunnen, 333 U.S. 591, 601-02 (1948)). "Where the previous decision rests on a 'different factual and legal foundation' than the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied." Wimsatt v. Beverly Hills Weight Loss Clinics Int'l., Inc., 32 Cal. App. 4th 1511, 1517 (1995).

The Ascarrunz case dealt with the Wells Fargo Home Mortgage 2012 Incentive Compensation Plan for HMCs. (Dkt. No. 51-9, P's RJN, Ex. B at 10.) While the specific provisions of the 2012 ICP are very similar to the provisions of the 2013 ICP, which are at issue in this case, they are not identical. For example, the "Involuntary Termination for Misconduct" provision of the 2012 ICP in Ascarrunz provides "Failure to meet minimum standards and requirements disqualifies Employee from earning compensation under the Plan. No monthly commission credit shall be awarded for loans which fund in the month of termination." (Dkt. No. 51-9 at 20.) The "Involuntary Termination for Misconduct" for the 2013 ICP states, "Misconduct may disqualify Employee from earning compensation under the Plan. If disqualified, no monthly commission credit shall be awarded for loans which fund in the month of termination." (Dkt. No. 25-5, Miller Decl., Ex. M at 167.) The 2013 ICP "misconduct" provision provides more definite terms of what may disqualify an employees from earning commissions while the 2012 ICP "misconduct" provision references a vague standard of failing to meet "minimum standards and requirements."

Moreover, the underlying facts in both cases differ. In Ascarrunz, the plaintiff was terminated for violating the Code of Ethics by his conduct of "whiting out" dates to a form and having a borrower redate the form instead of having the borrower submit a new form, and "whiting out" a bank routing number on a signed form authorizing payments to be taken directly from a borrower's bank account at the borrower's request

to use a different bank account instead of obtaining a new signature from the borrower. (Dkt. No. 51-9, Stipulated Facts ¶¶18, 22.) Wells Fargo terminated Ascarrunz for violating the Code of Ethics, "which Wells Fargo deemed in its discretion to be 'misconduct' under the ICP." (Id. ¶ 24.) Moreover, in Ascarrunz, the parties stipulated that the plaintiff had not committed fraud or stolen money. (Id. ¶ 21.) In contrast, in this case, Defendant claims Plaintiff was terminated for issuing fraudulent mortgage preapproval letters by not providing accurate information to customers and making false statements to customers.

In addition, the court in Ascarrunz specifically stated its ruling of unconscionability was "as applied to him in the circumstances of [his] case." (Dkt. No. 51-10 at 10.) Because the Ascarrunz case involves different underlying facts than this case, and the ICPs are not identical, the Court concludes that res judicata does not apply. However, Ascarrunz provides some guidance as to some of the same vague provisions that were contained in the 2012 and 2013 ICP, and the Code of Ethics.

## D.   Plaintiff's Evidentiary Objections

Plaintiff filed evidentiary objections to evidence submitted by Defendant in support of its opposition and cites to Rule 26(a)(3)(A)(iii).[8]   (Dkt. No. 55.) Specifically, she objects to the Declaration of Brandon Hinderaker since he was not disclosed as a witness in any Rule 26 disclosures. She also objects to the Declaration of Mark Faktor since he was not listed as a witness Defendant intends to use in its "statement for Pretrial Conference." (Id. at 3.) At the hearing, Defendant argued that its failure to disclose was substantially justified.

Rule 26(a) requires that a party must provide to the other party

   (i) the name and, if known, the address and telephone number of each

---

[8]Plaintiff incorrectly cites to Rule 26(a)(3)(A)(iii) concerning pretrial disclosures which are filed shortly before the pretrial conference, and address disclosures at trial. (Dkt. No. 16 at 5-7.) Moreover, her argument would be without merit because Defendant disclosed Branden Hinderaker in its pre-trial disclosures filed on September 11, 2015. (Dkt. No. 45 at 2.) It appears that Plaintiff intended to cite to Rule 26(a)(1)(A)(i).

[14CV1034-GPC(JMA)]

1
2
3

> individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;. . . .

Rule 26(a)(1)(A)(i).  Rule 26(e) provides that a

> party who has made a disclosure under Rule 26(a) . . .must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Rule 26(e).

If a party fails to disclose or supplement as required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Factors relevant to determine whether nondisclosure is "substantially justified" include "whether the failure to disclose was willful or merely negligent; and whether the nondisclosure resulted from factors beyond the control of the expert's proponent."  Schwarzer, Fed. Civil Proc. Before Trial, § 11:451 (Rutter 2015) (concerning expert disclosures); see also Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1028 (9th Cir. 2003) (no "substantial justification" for nondisclosure where counsel's only explanation was that "there was a rash of discovery when we were involved in the case.")

Here, Defendant did not disclose the names of Hinderaker and Faktor in its Rule 26(a) nondisclosures and it does not appear that it supplemented its disclosures under Rule 26(e).  However, the nondisclosure was not willful because Defendant was not aware about the issue of unconscionability until it was raised in Plaintiff's opposition to Defendant's motion for summary judgment in July 2015, long past the discovery deadline on April 20, 2015.  Moreover, the issue was unexpectedly raised by Plaintiff in its opposition so Defendant could not properly respond to the issues in its reply. Therefore, the Court finds Defendant's failure to disclose was substantially justified. Accordingly, the Court OVERRULES Plaintiff's objections to the declarations of

[14CV1034-GPC(JMA)]

1 Brandon Hinderaker and Mark Faktor.

2 **E.    Unconscionability**

3 Plaintiff alleges that she was owed commissions, pursuant to California Labor

4 Code sections 201 and 203, on loans that funded in the month of her discharge, March

5 2013, and 30 days thereafter.  She also asserts that the "misconduct" provisions of the

6 Code of Ethics, and the 2013 Incentive Compensation Plan[9] for HMCs that Defendant

7 relied on to deny her commissions are unconscionable and unenforceable.

8 Defendant argues that Plaintiff is not entitled to the commissions because the

9 2013 ICP provides for the disqualification of commissions if termination is due to a

10 violation of the Code of Ethics and Risk Management Accountability Policy.

11 According to Defendant, Plaintiff was terminated for misconduct as provided in the

12 2013 ICP by issuing unauthorized and fraudulent pre-approval letters to Wells Fargo

13 customers who had not been pre-approved for a mortgage by Wells Fargo.

14 The 2013 ICP addresses eligibility for incentive compensation.

15 To be eligible for incentive compensation, you must satisfy minimum
standards and requirements as set forth in the Plan.  Additionally, you
16 must adhere to *Wells Fargo's Code of Ethics and Business Conduct,*
Wells Fargo's employment policies, and the compliance and risk
17 management accountability requirements for your position, including,
but not limited to, compliance with all policies, laws, rules, and
18 regulations applicable to WFHM business activities as a condition
precedent to earning compensation under the Plan.  Failure to meet
19 these minimum standards and requirements will disqualify you from
earning incentive compensation under the Plan . . . and may result in
20 corrective action, including, but not limited to, immediate termination
of employment. . . .
21
A Participant's incentive opportunity under the Plan may be adjusted
22 or denied, regardless of meeting performance measures, for
unsatisfactory performance or non-compliance with or violation of
23 Wells Fargo's

24 1.    Code of Ethics and Business Conduct;
2.    Information Security Policy, and/or
25

26

27 ──────────────

28 [9]Since Plaintiff does not cite to specific provisions in the Risk Management
Accountability Policy, and only provides general arguments on this Policy, the Court
does not address unconscionability as to this policy.

3.      Risk Management Accountability Policy.[10]

(Dkt. No. 25-5, Miller Decl., Ex. M. at 158.)   The 2013 ICP further states, "[m]isconduct may disqualify Employee from earning compensation under the Plan. If disqualified, no monthly commission credit shall be awarded for loans which fund in the month of termination." (Id. at 167.)   Misconduct means, "Employee's receipt of notice of termination by Employer arising from . . . 2) Employee's violation of Employer's policies including, but not limited to, Wells Fargo's Code of Ethics and Business Conduct, Information Security Policy or Compliance and Risk Management Accountability Policy . . . ." (Id. at 168.)   The next paragraph states, "[e]vents such as those described above may trigger a termination for violation of policy.   Team members terminated for violation of policy will not be eligible for unpaid incentives." (Id.)   In this case, misconduct under the 2013 ICP is based on compliance with the provisions of the Code of Ethics.

A salesperson's right to a commission depends on the terms of the contract for compensation.  Nein v. HostPro, Inc., 174 Cal. App. 4th 833, 853 (2009).   However, terms of a contract may be unenforceable if deemed to be unconscionable.  See Cal. Civil Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").

Unconscionability has a procedural and a substantive element.  American Software Inc. v. Ali, 46 Cal. App. 4th 1386, 1390 (1996).   The procedural component focuses on oppression, unequal bargaining power, and surprise.  Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997).   The substantive element "has to do with the

_____

[10]The Risk Management Accountability Policy is a more general policy on knowing Wells Fargo's policies, procedures, standards and guidelines and for compliance with the laws, regulations and policies applicable to one's job. (Dkt. No. 25-5, Miller Decl., Ex. D at 114-15; Ex. E at 117-18; Ex. F at 120.)

[14CV1034-GPC(JMA)]

effects of the contractual terms and whether they are unreasonable." <u>Marin Storage &</u> <u>Trucking, Inc. v. Benco Contracting and Eng'g, Inc.</u>, 89 Cal. App. 4th 1042, 1053 (2001). Whether a contract is unconscionable must be evaluated at the time the contract was made. <u>Stirlen</u>, 51 Cal. App. 4th at 1532. "Some courts have indicated that a sliding scale applies for example, a contract with extraordinarily oppressive substantive terms will require less in the way of procedural unconscionability" <u>Amercan Software, Inc.</u>, 46 Cal. App. 4th at 1391. "To be unenforceable, a contract must be both procedurally and substantively unconscionable." <u>Stirlen</u>, 51 Cal. App. 4th at 1532.

### 1.   Procedural Unconscionability[11]

Procedural unconscionability concerns unequal bargaining power, absence of real negotiations, and surprise, resulting from hiding disputed terms in a prolix document. <u>American Software, Inc.</u>, 46 Cal. App. 4th at 1391. When an employee is required to execute an [ ] agreement as a prerequisite of employment without an opportunity to negotiate, the agreement will be deemed adhesive and procedurally unconscionable. <u>Armendariz v. Fdn. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 115-16 (2000); <u>Szetela v. Discover Bank</u>, 97 Cal. App. 4th 1094, 1100 (2002) (when the weaker party is told to take it or leave it without a meaningful opportunity to negotiate, procedural unconscionability is present.); <u>Aral v. EarthLink, Inc.</u>, 134 Cal. App. 4th 544, 557 (2005) (no opportunity to opt out "is quintessential procedural unconscionability"). "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." <u>Armendariz</u>, 24 Cal. 4th at 113. "The term [contract of adhesion] signifies a [1] standardized contract, which, [2] imposed and drafted by

---

[11]In its prior order on Defendant's motion for summary judgment, the Court concluded that Wells Fargo's policies were procedurally unconscionable because Plaintiff presented allegations that the policies were drafted by Wells Fargo and presented on a take-it-or-leave-it basis and Defendant failed to provide any facts to dispute Plaintiff's allegations because the issue of unconscionability was only first raised in Plaintiff's opposition papers. Since Defendant has now been able to respond to Plaintiff's unconsionability argument, the Court revisits its ruling on procedural unconscionability.

the party of superior bargaining strength, [3] relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Id.; see also Bruni v. Didion, 160 Cal. App. 4th 1272, 1291 (2008). "It is well settled that adhesion contracts in the employment context, that is, contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." Serpa v. California Surety Investigations, Inc., 215 Cal. App. 4th 695, 704 (2013).

In her motion, Plaintiff states that the Code of Ethics and 2013 ICP were prepared solely by Wells Fargo without input by Sako or any other HMCs or non-management employees, and are "take it or leave it" policies.[12] She also alleges she did not receive a hard copy of the Code of Ethics or Risk Management Accountability Policy. (Dkt. No. 51-4, Sako Decl. ¶ 9.)

In response, Brandon Hinderaker, Defendant's Compensation Consultant IV,[13] states that "it is common for HMCs to negotiate the terms of the ICP as it applies specifically to their employment . . . and [he] is personally involved in negotiations regarding possible alterations to the ICP if any proposed exception to an ICP exceeds a value of $25,000." (Dkt. No. 54-1, D's App'x of Evid., Ex. A, Hinderaker Decl. ¶ 5.) "It is not unusual for Wells Fargo, particularly through the process of negotiating an offer letter . . . to approve certain changes requested by Team Members to the terms that are part of the standard ICP . . . ." (Id.) The ICP is not presented to HMCs on a take-it-or-leave-it basis, and HMCs have the power to and often do negotiate changes to the ICP. (Id.) Defendant further argues that the "misconduct" provision was not "hidden" from Plaintiff. She had the opportunity to read the ICP, she is an experienced

---

[12]Plaintiff also argues that there is a strong showing of procedural unconscionability in this case because Nichole Hess applied the wrong contractual terms from the wrong contract in denying Sako's commission. However, whether a provision is unconscionable is determined at the time the contract was made. See Stirlen, 51 Cal. App. 4th at 1532; Cal. Civ. Code § 1670.5. Therefore, Plaintiff's argument is not relevant to the analysis.

[13]A Compensation Consultant IV is responsible for leading Wells Fargo's branch retail sales compensation team. (Dkt. No. 54-1, Hinderaker Decl. ¶ 2.) This team partners with business lines to build compensation initiatives, including the ICPs for HMCs. (Id.)

salesperson well-versed in the importance of contracts, she derived a substantial part of the income from commissions and reasonably would be concerned with the terms governing how she would be paid, and the provision was not hidden but prominently displayed within a user-friendly chart with the font, formatting and bolding designed for readability.  In addition, Plaintiff testified that while she does not recall receiving a copy of the 2013 ICP, she was aware of the terms for her commissions for 2013 and how she was paid.  (Dkt. No. 54-3, Kearney Decl., Ex. A, Sako Depo. at 323:22-25.)

The Code of Ethics, and the 2013 ICP are drafted solely by Wells Fargo.  (Dkt. No. 32-3, Gomez Decl., Ex. 10, Hess Depo. at 40:18-20; Dkt. No. 51-4, Sako Decl. ¶ 9.)  Wells Fargo receives no input from HMC or non-management employees in drafting the policies. (Dkt. No. 51-4, Sako Decl. ¶ 9.)  The ICP contains twelve pages of boilerplate language.  (Id. ¶ 10.)  Sako states that the ICP is a "take it or leave it" plan which means "HMCs like myself cannot negotiate or alter the terms of the plan." (Id. ¶ 10.)  Based on these facts, Plaintiff has demonstrated that the plans are contracts of adhesion.  See Armendariz, 24 Cal. 4th at 113.  The Court also notes that in her declaration, Miller stated that "Team Members employed in a position in a mortgage or bank branch are not and have never been authorized to determine, establish, or change any corporate policy of Wells Fargo and are not corporate officers or directors of Wells Fargo." (Dkt. No. 25-5, Miller Decl. ¶ 22.)  This contradicts Hinderaker's declaration stating that the provisions in the ICP are subject to negotiations and changes.

Moreover, while Defendant presents a declaration by Hinderaker that ICPs have been negotiated when negotiating an offer letter, it does not present evidence that it advises employees of the ability to negotiate either the Code of Ethics or the 2013 ICP when it offers employment to a potential employee. Furthermore, there is no evidence that Defendant has specifically negotiated, with an HMC, the specific provisions at issue in this case, which are the misconduct and/or disqualification provisions in the 2013 ICP and the Code of Ethics.  Accordingly, the Court concludes that the provisions

[14CV1034-GPC(JMA)]

in the Code of Ethics and the 2013 ICP concerning misconduct and disqualification of commissions are procedurally unconscionable.

### 2.   Substantive Unconscionability

Plaintiff also argues that the vague provisions in the Code of Ethics, and the 2013 ICP make them substantively unconscionable.  The policies give Wells Fargo unfettered discretion to enforce subjective and vague conduct with no definitions.[14]  In response, Defendant maintains that the Code of Ethics and the 2013 ICP are not vague and provide Plaintiff with notice as to specific conduct, such as "falsification" of information, that would trigger disqualification of commissions.  Second, Defendant, as an employer, had a business justification for the misconduct provision.  Lastly, the challenged provisions are common in the mortgage industry.

Substantive unconscionability looks to the "one-sided" or "overly harsh" results of a contract.  Stirlen, 51 Cal. App. 4th at 1532.  "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." Samaniego v. Empire Today LLC, 205 Cal. App. 4th 1138, 1147 (2012) (quoting Lhotka v. Geographic Expeditions, Inc., 181 Cal. App. 4th 816, 824-25 (2010)). Furthermore, "a claim of unconscionability often cannot be determined merely by examining the face of the contract, but will require inquiry into its setting, purpose, and effect."  Perdue v. Crocker Nat'l Bank, 38 Cal.3d 913, 926 (1985).

In American Software, Inc., the court explained that in evaluating substantive unconscionability, the contract terms are to be evaluated "in the light of the general commercial background and the commercial needs of the particular trade or case . . . ."  American Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1392 (1996) (quoting Cal. U.C.C. § 2-302, comment 1) (involving a voluntary termination); see also Cal. Civil Code § 1670.5 ("[w]hen it is claimed or appears to the court that the contract or any

---

[14]Plaintiff again argues that Defendant applied the wrong contractual terms to deny Plaintiff's commissions.  However, as indicated above, to determine unconscionability, the Court looks "'at the time [the contract] was made' to determine if gross unfairness was apparent at that time."  American Software, Inc., 46 Cal. App. 4th at 1392 (quoting Cal. Civ. Code § 1670.5(a)).

[14CV1034-GPC(JMA)]

clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."); Koehl v. Veria, Inc., 142 Cal. App. 4th 1313, 1340 (2006) (commission plan was not substantively unconscionable because it was commonplace in the industry).

A "contract is largely an allocation of risks between the parties, and therefore that (sic) a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner." Stirlen, 51 Cal. App. 4th at 1532. A lack of mutuality can support a finding of substantive unconscionability. Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1285-86 (9th Cir. 2006); Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1043 (9th Cir. 2001). The Court looks at whether the contract terms are so unreasonable, unjustified, or one-sided as to "shock the conscience." Stirlin, 51 Cal. App. 4th at 1055. Moreover, substantive unconscionability also turns on the absence of justification for it. A&M Produce Co. v FMC Corp., 135 Cal. App. 3d 473, 487 (1982).

Plaintiff challenges the same provisions challenged in the Ascarrunz case and argues that Wells Fargo retains unlimited discretion to withhold an employee's commissions, and that the term "misconduct" does not have a meaningful definition but references a violation of vague provisions contained in the Code of Ethics. In her motion, Plaintiff challenges the following provisions in the 2013 ICP: "The terms and conditions of the Plan are subject to periodic review and may be adjusted by WFHM. . . . The Plan is subject to change at any time at the Employer's sole discretion." (Dkt. No. 25-5, Miller Decl., Ex. M at 158, § II.) "The Plan Administrator and/or WFHM [Wells Fargo Home Mortgage] . . . has the full discretionary authority to adjust or amend a Participant's Incentive opportunity to incentive payout under the Plan at any time." (Id. at 158, § III.) "A Participant's incentive opportunity under the Plan may be adjusted or denied, regardless of meeting performance measures, for unsatisfactory performance or non-compliance with or violation of Well's Fargo's: 1. Code of Ethics

and Business Conduct; 2. Information Security Policy, and/or 3. Risk Management Accountability Policy." (Id. at 158, § III.) "The Plan Administrator . . . may amend, suspend or terminate the Plan at any time for any reason, with or without notice." (Id. at 166, § VI(D).) "The Plan Administrator has the full discretionary authority to administer, interpret and construe the terms of the Plan." (Id. at 166, § VI(C).) "The Plan Administrator has the authority to resolve all issues and disputes related to the Plan . . . All decision by the Plan Administrator will be final, conclusive and binding." (Id. at 167, § VI(E).)   These provisions in the 2013 ICP grant Wells Fargo with very broad discretion to determine a Team Member's compensation.

Plaintiff also argues that the Code of Ethics contains vague conduct with no definitions giving Wells Fargo unfettered discretion to determine what constitutes "misconduct." Wells Fargo's Code of Ethics, in early 2012, late 2012 and 2013, while Sako was employed with Wells Fargo, states that team members should "act in a manner that will serve the best interests of Wells Fargo, that is honest and trustworthy, that will preserve confidential information, and that will avoid conflicts of interest or the appearance of conflicts of interest." (Dkt. No. 25-5, Miller Decl., Ex. A at 12; Ex. B at 38; Ex. C at 64.)

In response, Defendant argues that the 2013 ICP specifically defines "misconduct" as termination of employment arising from (1) conviction of a crime or an act or omission that renders the Team Member unbondable; or a (2) violation of Wells Fargo's policies, including the Code of Ethics and Risk Management Accountability Policy. According to Defendant, the Code of Ethics specifically states that "[f]alsification of any company . . . information that you provide is prohibited. Falsification refers to knowingly misstating . . . information . . . which results in something that is untrue, fraudulent, or misleading." (Dkt. No. 25-5, Miller Decl. Ex. A at 14; Ex. B at 40-41; Ex. C at 68.)

Defendant contends that the Court should disregard as irrelevant the numerous provisions in the ICP that Plaintiff challenges because the "only provision of the ICP

that Wells Fargo relied upon for its decision that Plaintiff's misconduct disqualified her from earning compensation under the plan is the "Misconduct Provision" specifically relating to "Involuntary Termination for Misconduct." (Dkt. No. 53 at 27.) Plaintiff challenges not only the vague provisions of the 2013 ICP but also the "misconduct" provision in the 2013 ICP which relies on provisions of the Code of Ethics. The Court concludes that the provisions in the 2013 ICP are relevant to determine how much discretion Wells Fargo has to enforce provisions of the 2013 ICP which demonstrates lack of mutuality and "one-sided" results.

Moreover, the Court concludes that Defendant's argument, that the Code of Ethics is not vague by pointing to the provision on "falsification" of information, is without merit. A careful review of the evidence in this case, which includes documents produced on Defendant's motion for summary judgment, reveals that the reason for Sako's termination was that she committed a "dishonest act" and not explicitly "falsification" of information. (Dkt. No. 25-6 Collins Decl. ¶ 3 (fact finding report concluded that Plaintiff's acts violated Wells Fargo's Code of Ethics and Risk Management Accountability policy and were considered dishonest acts against Wells Fargo); Dkt. No. 25-5, Miller Decl. Ex. L at 151-56 (Fact Finding Report).) According to Miller's fact finding report, which appears to be the basis of Sako's termination, the "Analysis of the Facts and Conclusion" states, "Based on research above, team member used non-approved forms for pre-approvals & failed to comply with PBL requirements. As such, she has violated the WF Code of Ethics and Business conduct and Risk Management Accountability policy. Her actions are considered a dishonest act against Wells Fargo." (Dkt. No. 25-5, Miller Decl. Ex. L at 155.) The fact-finding report states that one of the provisions of the Code of Ethics and Business Conduct that was violated was "Act with Honesty, Integrity & Trustworthiness." (Dkt. No. 32-2, Gomez Decl. at 147.)

Act with Honesty, Integrity & Trustworthiness provides,

To preserve and foster the public's trust and confidence, complete honesty and fairness is required in conducting internal and external

1   business.  It's important that every Wells Fargo team member

2   understands that the honesty, trust, and integrity essential for meeting

    the highest standards of corporate governance are not just the

3   responsibility of senior management, or boards of directors.  We all

    share that responsibility.  Corporate ethics is the sum total of the

4   ethical decisions that all of us make every day.

5   (Id.)  The Court concludes that these provisions are vague, without definition, and

6   provide no guidance to employees as to how they must conduct themselves.  (See Dkt.

7   No. 51-10 at 7-8, Ascarrunz, San Francisco Superior Court Case No. CGC-13-534620.)

8   The fact-finding report does not contain the word "falsification" as a reason for her

9   termination.[15]

10      Furthermore, the Court notes that based on Wells Fargo's procedures in

11  terminating Plaintiff, it is not specifically clear which violated policy was the basis of

12  Sako's termination.  After Corporate Security conducted its investigation, Miller

13  drafted a fact-finding report, which states several policies that were violated. (Dkt. No.

14  25-5, Miller Decl. ¶ 15.)  After a review of the fact-finding report, the Business

15  Conduct Review Committee voted to proceed with Miller's recommendation of

16  termination.  (Id.) Then the recommendation was presented to Collins since he was the

17  divisional manager for Sako's division.  (Id. ¶ 16.)  Collins authorized the termination

18  of Plaintiff's employment.  (Dkt. No. 25-6, Collins Decl. ¶ 3.) Based on these facts, it

19  is not clear whether the Business Conduct Review Committee and Collins adopted the

20  fact-finding report in whole or in part.[16]

21

22      [15]The fact-finding report states the impacts and risks to Wells Fargo as "Liability
    regarding accurate records/documents" and "Liability for false statements and false

23  commitments." (Dkt. No. 25-5, Miller Decl., Ex. L at 155.)  However, these concern
    the impact to Wells Fargo and not reasons for Plaintiff's termination.

24

25      [16]In a post hoc declaration dated May 26, 2015, Miller concluded that Plaintiff's
    actions with regard to issuing unauthorized preapproval letters violated the Code of

26  Ethics and Risk Management policy which include the following: "Plaintiff did not
    comply with Wells Fargo's policies and procedures, did not act in an honest, ethical,

27  and legal manner, did not act to protect Wells Fargo's reputation, did not provide
    accurate information to customers, made false statements to customers, acted outside

28  her authority and created risk for Wells Fargo." (Dkt. No. 25-5, Miller Decl. ¶ 13.)
    However, all these reasons were not contained in her fact-finding report presented to
    Drew Collins in March 2013, and cannot be relied on for Wells Fargo's reasons to

1   Lastly, the Court notes that the evidence demonstrates that Plaintiff was not

2   provided with a written notice of termination which appears to be contrary to the

3   provisions of the 2013 ICP. (See Dkt. No. 32-1, Sako Decl. ¶ 2; Dkt. No. 25-5, Miller

4   Decl., Ex. G at 131 (email from Miller to Sawyer states that team members do not

5   receive anything in writing regarding their termination).)   The ICP states that

6   misconduct means "Employee's receipt of notice of termination by Employer arising

7   from . . . ." (Dkt. No. 25-5 Miller Decl., Ex. M at 168.) "Receipt" implies a written

8   notice.   This demonstrates that Wells Fargo did not comply with its own policy

9   concerning termination.

10   Based on the above, the Court concludes that the vague provisions of the 2013

11   ICP, highlighted by Plaintiff, the misconduct provision of the 2013 ICP coupled with

12   the "honesty, integrity & trustworthiness" provision grant Wells Fargo with unfettered

13   discretion to enforce vague conduct which resulted in Sako's earned commissions

14   being withheld.   Such one-sided provisions with lack of mutuality are substantively

15   unconscionable.

16   Wells Fargo further argues that there is a business justification for its alleged

17   unconscionable provisions as specifically stated in the first sentence of the 2013 ICP,

18   which is to "motivate and reward your contribution and reinforce the need to meet the

19   risk and compliance accountability requirements of your position." (Dkt. No. 54-1, D's

20   App'x of Evidence, Ex. A, Hinderaker Decl., Ex. A at 8.)  Hinderaker states that the

21   ICP's purpose is to reinforce that HMCs satisfy risk and compliance accountability

22   requirements.   (Id. ¶ 6.)   It discourages HMCs from engaging in misconduct by

23   conditioning their ability to earn incentive compensation on not engaging in those acts.

24   (Id.)  Since the mortgage crisis, there has been increased scrutiny from regulators and

25   lawmakers on incentive compensation plans of loan officers.  (Id. ¶ 7.) As a result, the

26   ICP includes provisions disqualifying HMCs who commit misconduct from earning

27   incentive compensation, in part, so that HMCs do not engage in fraudulent acts in order

28   

terminate Plaintiff.

to increase their own compensation. (Id.) While there are justifications to disqualify an HMC of incentive compensation based on fraud, such fraudulent acts must be described with more definiteness.

Lastly, Defendants asserts that the ICP is common in the mortgage industry. According to Wells Fargo's Compensation Consultant IV, "the Compensation Team, review studies of other compensation plans offered in the mortgage industry and consults with industry-specific compensation experts so that Wells Fargo's ICP will be competitive with those in place at other financial institutions and so that the provisions of the ICP are similar to those generally accepted as common or standard in the industry." (Dkt. No. 54-1, D's App'x of Evidence, Ex. A, Hinderaker Decl. ¶ 4.) Moreover, since leaving Wells Fargo, Plaintiff has entered into two other compensation agreements with other financial institutions which contain similar provisions concerning an employer's discretion to modify or eliminate incentive payments. (Dkt. No. 54-3 at 96-98; Dkt. No. 54-3 at100-03; Dkt. No. 54-3 at 105-112.)

While provisions granting an employer discretion to modify or eliminate incentive payments may be common in the industry, Defendant has not demonstrated that such discretion coupled with vague conduct such as "dishonesty" are common in the industry.

Therefore, the Court finds, as a matter of law, that the "honesty" provisions of the Code of Ethics and the "misconduct" provision and related vague provisions in the 2013 ICP are substantively unconscionable, and are unenforceable.   The Court GRANTS Plaintiff's motion for summary judgment on the issue of unconscionability. Since the policies are unconscionable, the Court addresses Plaintiff's remaining causes of action for unpaid wages, waiting time penalties and UCL claim.

## F.     Unpaid Wages and Waiting Time Penalties

Plaintiff's claims for unpaid wages and waiting time penalties are based on her allegation that Wells Fargo owes her commissions on loans that funded in the month of her discharge and in the 30 days thereafter.  Plaintiff contends that Defendant's

conduct in disqualifying he from earned commissions was "willful."  In opposition, Defendant does not address the unpaid wages claim but argues as to waiting time penalties, such penalties should be precluded because there is a "good faith dispute" whether any wages are due.  Defendant contends that it disqualified Plaintiff from earning commission based on the terms of the 2013 ICP which it reasonably understood to be valid and enforceable, and conforms with the industry standard.

The parties do not dispute that commissions constitute wages under Labor Code section 200(a).  California Labor Code section 201(a) provides that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Cal. Labor Code § 201.  Because the Court concludes that the misconduct provisions of the 2013 ICP are unenforceable, Plaintiff is entitled to her commissions.  However, the parties dispute the amount of the commissions.  Plaintiff alleges she is owed $52,305.50 in commissions during the month of her termination and 30 days thereafter.  Defendant argues that she is entitled to less than $14,000 during the month of her termination and 30 days thereafter.  (Dkt. 54-2, Faktor Decl. ¶ 3.)  Since there is a genuine issue of material fact as to the amount of commissions, the Court DENIES Plaintiff's motion for summary judgment on the unpaid wages claim.

Section 203(a) provides that, if an employer violates section 201, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Labor Code § 203(a).  A "good faith dispute" as to whether any wages are due will preclude waiting time penalties.  Cal. Code Reg. tit. 8, § 13520.  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  Cal. Code Reg. tit. 8, § 13520.

> (a) Good Faith Dispute. A "good faith dispute" that any wages are due
> occurs when an employer presents a defense, based in law or fact

1
2
3
4

> which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

Cal. Code Regs. tit. 8, § 13520(a).

5
6
7
8
9
10
11
12
13
14
15

In <u>Barnhill</u>, the Court held that the employer's failure to pay was not willful because its legal duty to pay was unclear at the time of the violation.  <u>Barnhill v. Robert Saunders & Co.</u>, 125 Cal. App. 3d 1, 7-8 (1981) ("the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, "willful" merely means that the employer intentionally failed or refused to perform an act which was required to be done.")  In <u>Amaral</u>, the court found a good faith dispute arose when the defendant raised numerous legitimate defenses to a living wage ordinance.  <u>Amaral v. Cintas Corp. No. 2</u>, 163 Cal. App. 4th 1157, 1202 (2008).  The Court found, although it rejected the defenses, the "defenses were not unreasonable or frivolous."  <u>Id.</u>

16
17
18
19
20
21
22
23
24
25

Here, Defendant relied on the 2013 ICP and Code of Ethics to disqualify Sako from her commissions.  The history of this litigation reveals Defendant's good faith belief that the 2013 ICP and Code of Ethics were enforceable.  Besides a conclusory argument that Defendant knew there were unpaid commissions, Plaintiff does not present any evidence that Defendant's conduct was willful.  Accordingly, the Court DENIES Plaintiff's motion for partial summary judgment on the waiting time penalties causes of action, and sua sponte GRANTS summary judgment in favor of Defendant on this issue.[17]  See <u>Gospel Missions of America v. City of Los Angeles</u>, 328 F.3d 548, 553 (9th Cir. 2003) ("a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the

26
27
28

---

[17]Previously, Defendant moved for summary judgment on the waiting time penalties issue.  At that time, the issue was fully briefed by both parties.  Moreover, in the instant motion, Plaintiff moved for summary judgment on the waiting time penalties issue.  Therefore, Plaintiff has had the opportunity to brief and argue the issue.

issues involved in the matter'"); see also United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004) (A court may reconsider its own prior order as long as it has not been divested of jurisdiction over it).

### G.   Unfair Business Practices

Plaintiff alleges that Defendant's actions constitute unfair business practices in violation of California Business & Profession Code sections 17200 *et seq.* (Dkt. No. 1-1, Compl. ¶¶ 60-64.) She alleges unfair business practices based on violations of the Labor Code for failure to pay wages and waiting time penalties. Defendant opposes.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010). The parties do not fully address the merits of this cause of action. Accordingly, the Court DENIES Plaintiff's motion for summary judgment on the unpaid wages cause of action. However, since the Court granted summary judgment in favor of Defendant on the waiting time penalties, the UCL claims based on that violation fails. Accordingly, the Court GRANTS summary judgment in favor of Defendant on the waiting time penalties claim.

### H.   Defendant's Evidentiary Objections

Defendant filed evidentiary objections to evidence filed in support of Plaintiff's motion for partial summary judgment. (Dkt. No. 53-2.) The Court notes the objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider it.

### Conclusion

Based on the ruling above, the Court GRANTS in part and DENIES in part Plaintiff's motion for partial summary judgment. Specifically, the Court GRANTS Plaintiff's motion to find the subject contract provisions unconscionable. The Court also DENIES Plaintiff's motion for summary judgment for unpaid wages and related

UCL claim, and GRANTS summary judgment in favor of Defendant on the waiting time penalties claim and related UCL claim based on this violation.   The only remaining causes of action for trial are (1) the unpaid wages claim as to the amount of wages owed to Plaintiff and (2) the UCL claim based on the unpaid wages.

　　　　IT IS SO ORDERED.


DATED:  January 8, 2016

HON. GONZALO P. CURIEL
United States District Judge

[14CV1034-GPC(JMA)]