# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHO SAKO,<br><br>　　　　　　　　　　Plaintiff,<br>　vs.<br>WELLS FARGO BANK. N.A.,<br>　　　　　　　　　　Defendant. | CASE NO. 14CV1034-GPC(JMA)<br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

Before the Court is Plaintiff's motion for attorneys' fees and costs. (Dkt. No. 63.) A response was filed by Defendant and a reply was filed by Plaintiff. (Dkt. Nos. 65, 66.) After a review of the briefs, supporting documentation, and legal authority, the Court GRANTS in part Plaintiff's motion for attorneys' fees and costs.

**Background**

On April 24, 2014, Plaintiff Maho Sako ("Plaintiff") filed a complaint against Defendant Wells Fargo Bank ("Defendant"), her former employer, alleging causes of action for wrongful termination of employment in violation of public policy; race and gender discrimination in violation of the Fair Employment and Housing Act ("FEHA"); intentional infliction of emotional distress; violation of California Labor Code section 201 (unpaid wages); violation of California Labor Code section 203 (waiting time penalties); and violation of California Business and Professions Code section 17200 ("UCL"). (Dkt. No. 1-1, Compl.) On August 21, 2015 the Court granted in part and denied in part Defendant's motion for summary judgment. (Dkt. No. 40.) Specifically,

the Court granted summary judgment in favor of Defendant on the claims for wrongful termination, gender and sex discrimination under FEHA, and intentional infliction of emotional distress. (Id.) The remaining causes of action in the case were for unpaid wages pursuant to California Labor Code ("Labor Code") section 201, waiting time penalties pursuant to Labor Code section 203, and violation of the UCL based on these Labor Code violations. (Id.)

At the pretrial conference, the Court noted that the issue of unconscionabilty, raised for the first time in Plaintiff's opposition, is an issue of law not to be decided by a jury. Therefore, the Court allowed Plaintiff to file a summary judgment motion on the issue of unconscionability. (Dkt. No. 50.) In compliance with the Court's order, on November 16, 2015, Plaintiff filed a motion for partial summary judgment. (Dkt. No. 51.) After the motion was fully briefed, on January 8, 2016, the Court granted in part and denied in part Plaintiff's motion for partial summary judgment. (Dkt. No. 59.) The Court held that certain provisions of Wells Fargo's Code of Ethics ("Code of Ethics") and the 2013 Incentive Compensation Plan ("ICP") were unconscionable. Since the 2013 ICP and Code of Ethics were unenforceable, the Court addressed the two remaining Labor Code causes of action. (Id. at 22[1].) While the Court found that Plaintiff was entitled to her unpaid wages of commissions, the amount of the commissions was disputed. (Id. at 23.) Thus, the Court denied Plaintiff's motion for summary judgment on the unpaid wages claim, and related UCL claim. (Id. at 23,25.) On the waiting time penalties cause of action, the Court denied Plaintiff's motion for partial summary judgment, and *sua sponte* granted summary judgment in favor of Defendant, and granted summary judgment on the UCL claim based on the waiting time penalties. (Id. at 24-25.)

At a settlement conference with the Magistrate Judge, on January 28, 2016, the parties settled. (Dkt. No. 61.) According to the Confidential Settlement Agreement and General Release, Defendant agreed to pay Plaintiff $35,000 to resolve the case and

---

[1]The page numbers are based on the CM/ECF pagination.

also agreed to pay Plaintiff's "attorneys' fees and costs as ordered by the Court in an amount no less than $11,000." (Dkt. No. 65-1, Kading Decl. ¶ 7; Ex. F.)

In the instant motion for attorneys' fees and costs, Plaintiff seeks attorneys' fees in the amount of $335,657.50 plus a multiplier of 1.5 for an enhancement of $167,828.75 for a total of $503,486.25, and costs of $11,007.20. Defendant opposes arguing that Plaintiff is entitled to attorney's fees in the range of $11,747.00 to $30,209.00, and costs should not exceed $2,836.00.

**Discussion**

Plaintiff argues she is entitled to attorneys' fees under Labor Code section 218.5 as the prevailing party on the unpaid wages claim. See Cal. Labor Code § 218.5(a). She also argues she is entitled to attorneys' fee under California Code of Civil Procedure section 1021.5, also known as the Private Attorney General Act ("PAGA"), because she claims her case was vindicating the public policy of enforcing labor laws.[2] Defendant argues that the statutory basis for entitlement to attorneys' fee is irrelevant since it agreed to pay attorneys' fees and costs.

Labor Code section 218.5 provides for fee shifting in favor of the party that prevails on a claim for unpaid wages. Cal. Labor Code § 218.5. California Civil Procedure Code section 1021.5 provides,

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. Proc. § 1021.5. It appears that Plaintiff raises section 1021.5 as a

---

[2]Plaintiff also asserts she is entitled to attorneys' fees pursuant to Federal Rule of Civil Procedure 37(c)(2) for Defendant's failure to admit that she had suffered any loss of commissions. (Dkt. No. 63-1 at 11-12.) This argument is without merit as the Court concluded that Defendant had a reasonable belief during the lawsuit that she was not entitled to her commissions pursuant to the provisions of the 2013 ICP and Code of Ethics. (Dkt. No. 59 at 24.)

1 reason to be awarded *all* her attorney's fees. (Dkt. No. 63-1 at 11) ("Because Plaintiff meets all the requirements of CCP 1021.5, all attorneys' fees must be awarded.") However, as discussed below, attorney's fees under section 1021.5 are subject to reduction based on degree of success or other reasons. See Save Our Uniquely Rural Comm. Environ. v. County of San Bernardino, 235 Cal. App. 4th 1179, 1185-86 (2015) (applying reduction for degree of success in section 1021.5 case). The Court questions whether the PAGA factors for attorneys' fees have been met, but the issue is irrelevant since Plaintiff is entitled to attorney fees under Labor Code section 218.5, as a prevailing party, and Defendant agreed to pay attorneys' fees under the settlement agreement.

Where subject matter jurisdiction is based on diversity, the Ninth Circuit applies state law in determining attorney's fees. Hartless v. Clorox Co., 273 F.R.D. 630, 642 (S.D. Cal. 2011). California courts use the lodestar method to compute attorney fees. See Ketchum v. Moses, 24 Cal. 4th 1122, 1133-36 (2001); Serrano v. Priest, 20 Cal. 3d 25, 48-49 (1977). The lodestar method is calculated on the "careful compilation of the time spent and reasonably hourly compensation of each attorney." Ketchum, 24 Cal. 4th at 1131-32 (quoting Serrano, 20 Cal. 3d at 48). The lodestar "may be adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." Ketchum, 24 Cal. 4th at 1132.

Plaintiff seeks attorneys' fees using the lodestar method. Defendant argues that Plaintiff's attorneys' fees should be reduced to reflect his limited success and the limited effort he expended on his only successful claim and proposes three cuts to the attorneys' fee award.[3]

---

[3] As an initial matter, Defendant asks the Court to disregard the lodestar method and to determine attorneys' fees by assessing the percentage of the actual recovery, $35,000, with the initial settlement demand, $1,000,000, which if calculated is 3.5%. 3.5% of the total fees counsel claims to have incurred, $335,647.50, equals $11,747

**A.     Lodestar Calculations**

    **1.     Reasonable Hourly Rate**

Plaintiff seeks rates of $475.00 per hour for Attorney Alvin Gomez, and $425 per hour for Attorney Stephen Ilg. Defendant does not dispute the reasonableness of the hourly rates.

    **2.     Hours Reasonably Expended**

Plaintiff's counsel assert they spent a total of 714.7 hours on the case with Alvin Gomez spending 638.2 hours and Stephen Ilg spending 76.5 hours. Defendant does not dispute[4] the total billed amount of $335,657 but argues the fees must be reduced to reflect the outcome.

A trial court may reduce attorney's fees when a plaintiff achieves limited

---

in fees. Defendant provides no legal basis for its method of determining attorneys' fees, and the Court rejects such a proposal as it is contrary to California court's long-standing application of the lodestar method in calculating attorney's fees.

[4]Defendant argues that it is using the total billed amount as a starting point, not conceding that counsel's bills are accurate or reasonable, because it has little choice but to accept the total billed amount because no one can discern every entry that is "inflated" or "unreasonable" on an entry by entry basis and therefore, it "cannot present a line-by-line analysis of the time records." (Dkt. No. 65 at 15.) The Court disagrees that Defendant does not have the ability to challenge counsel's entry by entry time records. In footnote 4, Defendant then presents "for instance" arguments concerning reasons why it challenges the number of hours spent on certain tasks. (Id. at 16 n. 4.) Defendant challenges the 45.5 hours by Mr. Ilg and 15.3 hours by Mr. Gomez on researching and drafting Plaintiff's motion for partial summary judgment since it is nearly identical to Plaintiff's previously filed opposition to Defendant's motion for summary judgment. The Court disagrees. While portions of the motion for partial summary judgment were similar to the previously filed opposition to Defendant's motion for summary judgment, Plaintiff's motion involved more than just the brief, but included declarations, notice of lodgment, requests for judicial notice, and separate statement of undisputed facts consisting of 218 pages. (Dkt. No. 51.) Plaintiff's counsel's hours are not excessive.

Defendant also challenges Mr. Gomez' decision to associate in Mr. Ilg, from San Francisco, well over two years after the case had been proceeding which resulted in duplication of work and unnecessary fees for attorney travel. In response, Mr. Ilg submitted a declaration stating that he spent more than a dozen hours prior to November 2015 reviewing the documents and transcripts in the case that were not included in the fee motion. (Dkt. No. 66-1, Ilg Decl. ¶ 2.) Defendant fails to provide legal authority that a decision to associate in new counsel during a case is prohibited and not subject to attorneys' fees or costs. After a court's review of the billing records, it does not appear that there was duplication or unnecessary fees incurred. Either Mr. Gomez or Mr. Ilg appeared at depositions, or at the hearings; both were not billing for the same activity.

1  success. Save Our Uniquely Rural Cmty. Env't v. Cnty. of San Bernardino, 235 Cal.
2  App. 4th 1179, 1185 (2015). "Where the plaintiff has failed to prevail on a claim that
3  is distinct in all respects from his successful claims, the hours spent on the unsuccessful
4  claim should be excluded in considering the amount of a reasonable fee." Hensley v.
5  Eckerhart, 461 U.S. 424, 440 (1983).  However, if the claims are related, "a plaintiff
6  who has won substantial relief should not have his attorney's fee reduced simply
7  because the district court did not adopt each contention raised. But where the plaintiff
8  achieved only limited success, the district court should award only that amount of fees
9  that is reasonable in relation to the results obtained." Id.  California courts have
10 applied the standard announced in Hensley stating that where the claims are distinct
11 and not closely intertwined, "reduced fee award is appropriate when a claimant
12 achieves only limited success" Chavez v. City of Los Angeles, 47 Cal. 4th 970, 989
13 (2010).  If the claims are closely intertwined and the plaintiff only prevails on one of
14 several claims, then fees are not reduced.  Id.  "The limited success determination has
15 two components: first, the court must deduct from the lodestar hours spent exclusively
16 on unrelated unsuccessful claims; and second, the court must evaluate the remaining
17 hours to determine if they were reasonably necessary to achieve the result obtained.
18 Hensley, 461 U.S. at 434; Envt'l Prot. Info. Ctr. v. California Dept. of Forestry and Fire
19 Protection, 190 Cal. App. 4th 217, 238 (2010) (applying two part test in Hensley).  If
20 the claims are based on different facts and legal theories, the claims are unrelated; on
21 the other hand related claims "will involve a common core of facts or will be based on
22 related legal theories." Hensley, 461 U.S. at 434-45; see also Envt'l Prot. Info. Ctr.,
23 190 Cal. App. 4th at 239 (citing Hensley).

First, Defendant contends that the fees should be reduced by 80% because
Plaintiff's counsel only obtained relief on one of the five[5] substantive causes of actions.
Plaintiff replies that the United States Supreme Court has rejected a mathematical

---

[5]It appears Defendants view the UCL claim as being subsumed by the unpaid wages cause of action.

approach comparing the total number of issues with those actually prevailed on. Hensley, 461 U.S. at 435 n. 11 (rejecting mathematical approach of comparing the total number of issues in the case with those actually prevailed upon). The Court agrees and rejects Defendant's approach to automatically reduce the fees by 80% based on a 20% success on the number of claims in the complaint.

Second, Defendant proposes a second cut of 50% where fees should be reduced because Plaintiff obtained relief after "piggybacking" or "cribbing the work" on the Ascarrunz[6] class action case in state court and cites to Thayer v. Well Fargo Bank, N.A., 92 Cal. App. 4th 819 (2001) in support. The Court disagrees with Defendant's argument that a 50% cut be made based on the Ascarrunz case. First, the facts of this case are distinguishable from Thayer. In Thayer, there were five coordinated class action proceedings where the complaints, prepared by nine law firms, were substantially the same. Id. at 824, 840-41 (trial court questioning the filing of so many duplicative actions). Here, while the issue of unconscionability was the same, Plaintiff alleged other causes of action of wrongful termination, gender and sex discrimination and emotional distress that are distinct from the Ascarrunz case.

Second, while the legal standard in this case was similar to the Ascarrunz order, the facts in this case are different and counsel had to apply the law to the facts of the case, and provide supporting documentation. It is to be noted that Plaintiff's opposition to Defendant's motion for summary judgment constituted 474 pages, (Dkt. No. 32), and her motion for summary judgment consisted of 218 pages. (Dkt. No. 51.) Defendant's suggestion of a 50% cut is without merit.

Third, Defendant proposes a third cut where the fees should be reduced an additional 10% because counsel's effort in recovering commissions were unnecessary because Defendant sought to resolve the case with Plaintiff but Plaintiff refused to consider a settlement in the range of the amount of unpaid commissions and would not

---

[6] Ascarrunz v. Wells Fargo, San Francisco Superior Court Case No. CGC-13-534620 (Aug. 25, 2014).

consider a settlement demand of less than $885,000. (Dkt. No. 65-1, Kading Decl. ¶ 10.) Therefore, any work from preparing for the September 2015 settlement conference, the November 2015 motion for partial summary judgment and the January 2016 settlement conference should be excluded. Defendant argues that the court should not award attorney fees for the period of time after Plaintiff refused to settle.

A trial court cannot reduce an attorney fee award because the opposing party declined an informal settlement offer which exceeded his ultimate recovery. Greene v. Dillingham Construction, N.A., Inc., 101 Cal. App. 4th 418, 425-26 (2002); see also Berkla v. Corel Corp., 302 F.3d 909, 922 (9th Cir. 2002) (plaintiff's failure to accept a settlement offer that is less than the amount he recovered is not a legitimate basis for denying an award of fees in the absence of a Rule 68 offer of judgment). Defendant's argument for an additional 10% cut is not supported.

While the Court rejects Defendant's proposed cuts, the Court conducts its own analysis based on Plaintiff's limited success. Plaintiff's complaint alleged six causes of action for wrongful termination; race and gender discrimination; intentional infliction of emotional distress; unpaid wages; waiting time penalties; and violation of the UCL. (Dkt. No. 1-1, Compl.) After two rounds of summary judgment, Plaintiff prevailed solely on the unpaid wages cause of action and related UCL claim. Eventually, the parties settled for the unpaid wages claim for $35,000.

Defendant argues that the claims for gender and sex discrimination, wrongful termination and emotional distress are distinct and not related to the unpaid wages claim. Defendant contends that Plaintiff's counsel did not pay attention to the commission issue until he prepared his opposition to Defendant's motion for summary judgment, two years after filing the complaint. To support its argument, Defendant notes that the commission issue was not raised until much later in the ligation and note that the word "commission" was hardly raised during several depositions. For example, Defendant argues that of the 769 pages of deposition testimony in eight depositions, the word "commission" appears on only 23 pages. (Dkt. No. 65 at 17.)

1  Defendant also contends that the termination related claims are not "inextricably
2  intertwined" with the commissions claims.  Her termination related claims were
3  premised on the theory that Wells Fargo relied on Sako's use of fraudulent preapproval
4  letters as a pretext for the termination and that the real reason was race and gender,
5  complaints that other HMCs solicited customers in their own "book of business" and
6  her complaints that she needed an assistant.

7  Plaintiff argues that counting the word "commission" in a deposition transcript
8  does not show that commission was not the focus of discovery.  She contends that any
9  discovery regarding the termination policies, and nature of the termination relate to the
10 commissions and are intertwined and related.

11 Plaintiff does not address whether the causes of action for wrongful termination,
12 gender and sex discrimination, and emotional distress claims are "inextricably
13 intertwined" with the termination/commissions issue and appears to concede this issue.
14 The Court agrees with Defendant that the facts and legal issues of wrongful
15 termination, gender and race discrimination and emotional distress are not intertwined,
16 and should be excluded from attorney's fees as these claims are based on different facts
17 and legal theories.  See Hensley, 461 U.S. at 434.  The Court also agrees with Plaintiff
18 that the reasons for termination and how she was terminated pursuant to the ICP and
19 Code of Ethics are related to the unpaid wages of commissions and the issue of
20 unconscionability.  Therefore, the Court rejects Defendant's attempt to limit attorney's
21 fees on the unconscionability issue solely by searching the word "commission" in the
22 deposition transcripts.

23 Thus, since Plaintiff had limited success, the Court now calculates the attorney
24 fees based on her degree of success.  On August 21, 2015, the Court issued its order
25 granting Defendant's motion for summary judgment where the unrelated claims for
26 wrongful termination, gender and sex discrimination under FEHA and intentional
27 infliction of emotional distress were disposed.  Therefore, all attorney work conducted
28

after August 21, 2015 is allowable as it concerned the remaining labor code issues[7] and unconscionability, which also includes all work performed by Mr. Ilg. Therefore, based on the time records submitted by Mr. Gomez, a total of $88,233.00 is awarded to Mr. Gomez, and $32,512.50 is awarded to Mr. Ilg for their work from August 24, 2015 through March 15, 2016. (Dkt. No. 63-2 at 13-21.) The total amount of attorneys' fees from August 24, 2015 through March 15, 2015 total $120,745.50. From the total fees sought of $335,657 and subtracting the total already granted, $120,745.50, the remaining attorney fees at issue is $214,911.50 for Mr. Gomez' work. As to this remaining amount, the Court reduces this amount by 50% to account for the limited success of unrelated causes of action, which totals $107,455.75. Therefore, adding $120,745.50 with $107,455.70, the total lodestar amount is **$228,201.25.**

**B.     Multiplier**

In her moving papers, Plaintiff seeks a multiplier of 1.5 for an additional sum of $167,828.75 because there is significant benefit to the public and to Home Mortgage Consultants of Wells Fargo throughout California based on the Court's ruling that the ICP was unconscionable. In her reply, she additionally argues a multiplier is appropriate because contingent risk is a valid consideration to enhance a fee award.[8] (Dkt. No. 66 at 5.) .

California courts permit a court to include a fee enhancement to an attorney fee award based on "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee

---

[7]Defendant does not dispute that the waiting time penalties claim that Plaintiff ultimately did not succeed on was not related to or intertwined with the unpaid wages cause of action.

[8]Defendant argues that her argument concerning contingency risk was first raised in the reply and should not be considered. See Adams v City of Rialto, No. EDCV 04-155-VAP (SGLx), EDCV 04-1032 VAP, 2006 WL 7090890, at *9 n. 19 (C.D. Cal. July 20, 2006) (court did not consider plaintiff's argument regarding an upward adjustment of the lodestar amount because it was raised for the first time in the reply). The Court agrees but addresses the contingency risk argument since Plaintiff has failed to demonstrate her counsel is entitled to a fee enhancement.

award." Ketchum, 24 Cal. 4th at 1132. A trial court is not required to include a fee enhancement but has discretion to do so in appropriate cases. Id. at 1138. The party moving for the fee enhancement bears the burden of proof. Id. "Unlike federal law, California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation." Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1112 (9th Cir. 2014).

> 'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.' [citation omitted] 'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.' [citation omitted].

Ketchum, 24 Cal. 4th at 1132-33 (citations omitted).

A contingency enhancement "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." Id. at 1138. The trial court should consider whether the attorney and client might have been able to mitigate the risk of nonpayment, for example, because the client has agreed to pay a portion of the lodestar amount. Id. The court should also consider the degree "to which the relevant market compensates for contingency risk, extraordinary skill, or other factors." Id.

While Plaintiff's counsel asserts that contingent risk is a valid consideration to enhance a fee award, he provides no justification or reasons for a fee enhancement besides the fact he took the case on a contingency basis. See Thayer, 92 Cal. App. 4th at 835 (reversing trial court's fee enhancement because there was no justification for increasing the lodestar award). In a declaration, Attorney Gomez states that he has not received attorney fees, and generally states that the workload precluded his firm from accepting other employment. (Dkt. No. 63-2, Gomez Decl. ¶¶ 27, 29.) However, Mr. Gomez provides no details as to how his firm was precluded from accepting other

1 cases. Moreover, it is not clear whether the contingency risk is already encompassed
2 in Mr. Gomez' hourly rate. Mr. Gomez states that he was awarded a rate of $511 per
3 hour in a case in San Diego Superior Court in an employment litigation case. (Dkt. No.
4 63-1, Gomez Decl. ¶ 13.) The Court assumes that this rate was a contingent rate. Mr.
5 Gomez provides no evidence on the rates that he charges if the matter was
6 noncontingent. He has not shown that a fee enhancement is warranted, and the Court
7 finds that a contingency fee multiplier is not justified.

8 The Court also disagrees with Mr. Gomez' statement that the case was novel and
9 difficult. If the public interest were a factor in assessing an enhancement, which Mr.
10 Gomez argues, the Ascarrunz case provided the benefit for the class of HMCs, not
11 Plaintiff's case. Plaintiff opted out of the Ascarrunz case, and Plaintiff's counsel only
12 represented one person's rights. Accordingly, the Court does not find that a fee
13 enhancement is warranted.

14 **C.     Costs**

15 Plaintiff seeks costs in the amount of $11,007.20. (Dkt. No. 63-2, Gomez Decl.
16 Ex. 2 at 20-21.) Without providing any legal support, Defendant opposes arguing that
17 for the same reasons as to attorney fees, Plaintiff's counsel is not entitled to recover
18 100% of his costs, and the Court should award 25% of the claimed deposition costs,
19 or $2,267, because the word "commissions" was barely mentioned in the depositions,
20 which comprise most of the costs claimed. Defendant also urges the Court to decline
21 to award any costs for travel to Florida to take Yvonne Killian's deposition, because
22 the word "commission" was not even mentioned in her deposition. Lastly, Defendant
23 argues that the travel costs for Mr. Ilg to come from San Francisco to San Diego to
24 argue Plaintiff's motion for partial summary judgment was unnecessary especially
25 since Mr. Gomez is based in San Diego and could have argued the motion. Plaintiff
26 replies that Killian's deposition was necessary because her deposition focused on
27 Defendant's policies which triggered her loss of commissions. Plaintiff concedes that
28 the depositions of Kristin Skura and Nancy Ruiz were of "minimal importance." (Dkt.

No. 67, Gomez Decl. ¶¶ 11, 12.)

A federal court sitting in diversity applies state substantive law and federal procedural law. Clausen v. M/V NEW CARISSA, 339 F.3d 1049, 1065 (9th Cir. 2003). A federal court will apply federal law on costs "unless a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme." Kelly v. Echols, No. CIVF 05118AWISMS, 2005 WL 2105309, at *16 (E.D. Cal. Aug. 30, 2005). Here, costs are not included as an element of damages for an unpaid wage claim under California Labor Code section 218.5; therefore, federal law governs. See Drumm v. Morningstar, Inc., 695 F. Supp. 2d 1014, 1027 (N.D. Cal. Feb. 26, 2010) (unpaid wage claim under Labor Code section 218.5 does not include costs as an element of damages). Under federal law, a district court may reduce costs to reflect limited success on the merits. Cummings v. Connell, 316 F.3d 886, 899 (9th Cir. 2003); Rodriguez v. Barrita, Inc., 53 F. Supp. 3d 1268, 1296 (N.D. Cal. 2014) (reducing costs by 20% because attorney's fees were also reduced 20%).

Based on the above, the Court reduces the deposition costs of $9068.40 by 50% to $4534.20. The Court also deducts the witness fee of Nancy Ruiz of $45.00 since Plaintiff agrees her involvement in the case was minimal. The Court declines to deduct the travel costs to Florida to take Killians's deposition as her deposition was relevant to the issue of unconscionability and Plaintiff's termination. The Court also declines to deduct the travel fee for Mr. Ilg to attend the hearing on Plaintiff's motion for partial summary judgment. Thus, the Court awards costs in the amount of **$6,428.00.**

/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /

**Conclusion**

Based on the above, the Court GRANTS in part Plaintiff's motion for attorneys' fees and costs. Specifically, the Court awards Plaintiff **$228,201.25** in attorneys' fees and **$6,428.00** in costs. The hearing date set for May 13, 2016 shall be **vacated.**

IT IS SO ORDERED.

DATED: May 11, 2016

HON. GONZALO P. CURIEL
United States District Judge